**YOUNG et al. v. JOHN McSHAIN, Inc., et al.**

No. 794—Civ.

District Court, D. Maryland.

June 18, 1941.

Cook & Markell and Charles Markell, Jr., all of Baltimore, Md., Earl & Chappell and Ralph L. Chappell, all of Kalamazoo, Mich., for plaintiffs.

522

Edwin F. Samuels, of Baltimore, Md., Otto R. Barnett and Lawrence T. Barnett, both of Chicago, Ill., and Charles D. Fogle, of Marietta, Ohio, for third party defendant.

Galvin & McCourt, J. Irvin McCourt, and Edward L. Ward, all of Baltimore, Md., for defendant and third-party plaintiff.

WILLIAM C. COLEMAN, District Judge.

This is a patent infringement suit, involving two patents relating to concrete floor construction. The individual plaintiff is the owner, by assignment, of both patents. One of the corporate plaintiffs, Lith-I-Bar Company, is the owner of an exclusive license under both patents, and the third plaintiff, W. E. Dunn Manufacturing Company, is a sub-licensee. Neither of these patents has previously been litigated. The earlier patent to H. F. Young, No. 1,928,748, was issued October 3, 1933, on application of December 9, 1929; and the second, to the same inventor, No. 1,938,887, was issued December 12, 1933, on application of April 25, 1931. The usual defenses of non-infringement and invalidity of the patents through anticipation by the prior art are asserted by both defendants. The Marietta Concrete Corporation supplied John McShain, Inc., with the unpatented pre-cast reinforced concrete joists which the latter used in its alleged infringing construction, and for this reason has been made a defendant also by the plaintiffs. This third party defendant asserts the further defense that it cannot be held responsible for any infringement which its customer, the Mc-Shain Company, may commit by reason of the latter's use of these joists in combination with other elements.

In the first of these patents there are seven claims, but only four are in suit, Nos. 2, 4, 6 and 7, of which 6 is as follows, and may be said to be typical: "A concrete floor or roof construction comprising a plurality of precast concrete joists spaced apart, and the said joists reinforced with longitudinal reinforcing strands in the top and bottom and having cross shear strands welded thereto, and a floor slab carried on forms or centering supported from the joists, the said concrete slab being formed with shoulders embracing the heads of the said joists." In the later patent there are ten claims, but three only are in issue, Nos. 4, 5 and 8. Suffice it to quote claim No. 8, which is as follows: "A concrete floor formed with precast joists having wall and girder supports extending between the said joists and embracing the same, the floor slab being formed with extensions embracing the heads of the said joists, the said concrete being continuous and embracing the ends of said joists."

Infringement of claims 9 and 10 had also been asserted, but towards the close of the taking of testimony, counsel for the plaintiffs stated that they abandoned any claim of infringement of these two claims. However, the Court feels that under all the circumstances of the case and because of the intimate relation of one patent and its claims to the other patent and its claims, it is appropriate to at least give an expression of opinion with respect to the validity of claims 9 and 10 also in patent No. 1,938,887. There is little difference between these two claims in phraseology, so suffice it to quote No. 9 as follows: "A concrete floor formed with precast joists having girder supports extending between the said joists and embracing the same, a floor slab formed with embracing portions for the heads of the said joists, the concrete being continuous and embracing the ends of said joists, and reinforcement rods in the floor slab above the said girder parallel to the said joists affording cantilever support and continuity."

Shorn of all technical language, as the Court understands these patents they may be said to relate to an alleged improvement in reinforced concrete floor construction by the use of various elements in combination. The earlier patent, 1,928,748, broadly speaking, is distinguishable from the later companion patent, in that the earlier patent does not purport to deal with the tying-up of the wall and girder construction with the floor slab and joist construction. In other words, we may very properly describe the earlier patent as relating to a reinforced concrete construction for uniting the joints with the floor, and the later patent as relating to reinforced concrete construction for doing the same thing in union with the casting, in monolithic form, of the floor slab with the girder. Both patents, it is to be noted, deal with a pre-fabricated concrete joist, and the Court does not understand that either of the patents purports to restrict the application of its drawings or specifica-

tion to any one particular kind of reinforced pre-fabricated concrete joists. That is, there may be considerable variation in the type of joist employed.

Turning first to the question of validity of the earlier Young patent, No. 1,928,-748, the Court feels convinced, after hearing the elaborate testimony and arguments, and examining the Patent Office file wrapper in this case, that it is anticipated by the French patent to Robin, No. 610,714, granted June 14, 1926. It appears that this Robin patent was not cited to the Patent Office. It further appears that from the very meagre language in the rulings of the Patent Office contained in the file wrapper, — and that is all we have to go by, — this Young patent would probably never have been issued, because of the prior patents to Evers, 1,273,344 (stressed as an anticipation by the defendant in the present suit); also the prior patents to Banks, No. 608,098, to Frost and Rings, No. 1,212,759, and the Swiss patent to Herbst, No. 39,811, had it not been for the fact that, by amendment, welding of the metal reinforcements in the joists was added. But welding of metal reinforcements is referred to in several of the prior art patents, and is obviously such an old, common method of holding metal together, that no novelty can be said to attach to its use in a combination such as Young's. See prior patent to Smith, No. 992,994, and to Ellinger, No. 1,094,841, neither of which appears to have been considered by the Patent Office in connection with the Young application.

Since we believe the Robin patent also anticipated the second Young patent No. 1,938,887, in suit, a consideration of the Robin patent is momentarily deferred.

We now turn to the second patent to Young, No. 1,938,887. As already explained, this embraces a larger combination, in that it relates not merely to union of the reinforced pre-fabricated joists with the floor slab, but also to the union of the latter in monolithic form with the girder, and then the combination of all three elements.

As the Court understands the alleged basic novelty in this patent it may be said to be two-fold: (1) the method of binding or uniting the girder, the concrete floor slab, and the joists where the latter rest upon the girder, and (2) the running of the reinforcement rods in the concrete floor slab parallel with the joists over such points. The first feature is substantially embraced in the earlier patent to Young although combination with the girder is omitted. The second feature is thus described in the later patent: "Reinforcement rods, 41, are disposed in the floor slab parallel to the joists and over the top of the girders, extending about one-third of the joist span each side of the girder and affording cantilever support to the joists and slab and providing continuity of the entire structure. Reinforcement rods, 42, are continuous from joist to joist extending in suitably spaced relation over the entire floor slab." In engineering, "cantilever support" implies support only at one end.

Unfortunately, both patents are almost devoid of any statement, either in the introduction or specifications, describing precisely the novelty and greater utility which Young claimed reposed in his patent. Young himself is no longer living. As the Court understands it, Young purported to claim that he, for the first time, brought old elements into combination in a new way and thereby produced a novel and useful method or system of concrete floor construction. But the most that Young did was to bring about an aggregation of old elements, producing really nothing by this aggregation that was not anticipated by the prior art. Doing merely this does not entitle one to a patent. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S. Ct. 495, 53 L.Ed. 805. This, indeed, is what the Patent Office said, in effect, whether unwittingly or not, when the application in Young patent No. 1,928,748 was under consideration. Under date of January 28, 1933, the acting examiner wrote to counsel for the inventor as follows: "Original claims 7, 8 and 9 are rejected on the reasons of record, more particularly the Banks patent, being fully met by the latter. The step of adding reinforcement is immaterial in claim 7 over this reference. *Reinforcement can be added in concrete construction as expedient without invention.*" (Italics inserted.)

While what has been said in previous decisions, unless said by the Supreme Court or by the Circuit Court of Appeals of this Circuit, or in cases between the same parties which would make the matter res adjudicata, is not necessarily binding upon this Court, and must be reviewed in the light of the particular facts as they

may arise in each separate case, nevertheless, the conclusion here reached is supported by language that is peculiarly applicable in Turner v. Lauter Piano Company, 248 F. 930, a decision of the Circuit Court of Appeals for the Third Circuit in 1918, in which a patent to one Turner, No. 985,119, and also a patent to the same person, No. 1,003,384, were held to be void for lack of invention in view of the prior art, those patents relating to monolithic concrete floor construction.

■ In that case the Court said (248 F. pages 932, 933): "Reinforced concrete of the modern kind came into use as a building material about fifty years ago. Its growth has been very rapid; it is now used upon an immense scale in a great variety of structures. During the progress of this art, much has been learned concerning the properties of concrete and great advances have been made in methods of using it. Yet, notwithstanding the knowledge acquired and the advances made, the fundamental problems of the art are the same today as they were in the beginning. They have to do with the peculiar characteristics of concrete and with means for meeting them. It is a matter of general knowledge that concrete is strong in resisting compression strains and weak in withstanding tensile strains. Places at which both strains may be expected, while susceptible of accurate mathematical ascertainment, are so well known that they are determined empirically by many engaged in the art. Therefore, as it is easy to ascertain, in one way or another, just where weak places in concrete construction are, the art has produced means with which to strengthen them. This consists in their reinforcement with materials possessing characteristics precisely the opposite of those of concrete. Thus, metal which possesses tensile strength is placed at weak points in concrete where it is subjected to tensile strains. This is called reinforcement and the product is reinforced concrete.

*"There is today neither invention nor novelty in merely placing metal reinforcement in concrete at places at which strains come. The very principle of reinforcement, as the word denotes, is to give force to or strengthen the place that is weak by adding something that is strong. Invention in reinforcement is to be found only in discovering a new principle or in employing new means embodying the old principle.*

*Therefore, one striving to find a new principle or to invent a new means of concrete reinforcement under the old principle, enters a well known and widely practiced art and must do something more than care for tensile strains at places where they are known to come.* Turner's brief is a learned dissertation on the principles and practices of the art of reinforced concrete construction. It is clear, after reading it, that he appropriates to his invention (rather unconsciously, we believe), many of the principles and some of the practices that have long been in the art. Had he been first to discover and apply them, his claimed invention would have been a great invention. But, in appropriating and applying them in his patented construction, he does not achieve invention unless he causes the old principle to operate in a new way, or the old means to perform new and different functions, resulting in a useful advance of the art." (Italics inserted.)

■ In closing, the Court in its opinion in the Turner case said further (248 F. page 938): *"There doubtless is merit in Turner's system of concrete construction; it may be superior to other systems; but merit, and superiority even, may spring from a conception which does not involve invention. These qualities may come, as we think they do in these patents, from a careful assemblage of different elements from various sources and the clever combining of them. The union of the selected elements may be an improvement upon anything the art contains, but, if, in combining them, no novel idea is developed, there is no patentable invention, however great the improvement may be."* (Italics inserted.)

Returning to Young patent No. 1,938,887, we find that it has been anticipated by the construction demonstrated in the French patent to Robin, No. 610,714, of June 14, 1926, already referred to in connection with the other Young patent in suit. It is true that in Robin, the construction is not identical in the sense that there is greater metal reinforcement in Robin. The reinforcement rods are brought out of the joist and over the junction point of girder and joist, but, when we analyze carefully the Robin construction, we find in that combination the two basic things upon which the present plaintiffs rest their claim for invention, namely, the type of union between the joist and the floor slab

and reinforcement rods in the floor slab, running parallel with the joist.

It is claimed on behalf of the plaintiffs that the Robin patent is not supported by evidence that it was ever actually used, and that, therefore, it must be treated as a paper patent; further, that because it is a foreign patent, it must be scrutinized with the greatest care; that its specifications are very meagre, and that, therefore, little, if any, weight should be given to it from the point of view of anticipation.

With this conclusion the Court is not able to agree, particularly because Mr. Frederick Ray, consulting engineer testifying for the defendants, was asked by the Court to transpose the Robin patent into a practical drawing,—one which could be laid on top, so to speak, of the primary figure (No. 1), in Young patent No. 1,938,887, so as to expose the full extent of similarity as it actually existed in the two patents,—and having done so, his drawing discloses such similarity as to clearly indicate that the basic features of the combination in both of the Young patents are inherent in the Robin combination, even though, as already stated, in Robin there are other features in the form of additional metal reinforcements. This latter fact we do not think can be allowed to obscure the existence of similarity in those features with which we are concerned and which may be considered independently, for our immediate purposes, of other features.

As the Court views the combination of Young, it amounts to no more than this: Young found that one did not need to bother with the added reinforcement produced by bringing metal rods out of the girder up over the joist, but that the metal reinforcements in the floor slab, placed parallel with the running of the joist, were sufficient. To take a simple simile, all that Young did was what a carpenter or contractor might do in building a flooring of wood construction, where you have girders, joists and floor involved. Of course, the carpenter knows from experience in his trade that at a weak place you should put more nails, or some additional support in the form of bolts, or rods. In the prior art, numerous patents, which it is not necessary to mention, disclosed, as was said in the Turner case from which we have just quoted, the very obvious fact that you could use reinforced concrete in a great variety of ways, making it strong-

er or weaker as the case might be, at the particular point where you wanted to vary the application of the metal to the load to be carried. There is no novelty over the prior art in so doing. As a matter of fact, the only claims of the Young patent as to which infringement is being asserted, i.e. claims Nos. 4, 5 and 8, do not provide for metal reinforcement in the floor slab.

While quite satisfied that invalidity of Young patent No. 1,938,887 may be rested primarily upon the French patent to Robin, we feel that Young is also anticipated in all substantial respects by the American patent to Simpson and Shoemaker, No. 739,030, of September 15, 1903. Indeed, this patent anticipates both of the Young patents in suit, except it does not include welding of the reinforcement rods which is specified in Young patent No. 1,928,748, already discussed. Also, we consider that the illustrated article in "Cement Age" for March, 1911, for which the editors give credit to Ernest L. Ransome, one of whose patents (No. 918,699) has been cited both before the Patent Office and in the present suit, as anticipating Young, does in fact do so. This article also was not cited to the Patent Office.

Finally, we repeat that we are not able to ascertain what was the precise reason which led the Patent Office to issue these patents to Young, and also that the Robin French patent and the article in "Cement Age", were not cited to the Patent Office in connection with Young's applications. We can only speculate as to what the Patent Office might have done had it possessed this additional information. We are not unmindful of the established doctrine that when a patent has issued it is clothed with the indicia of prima facie validity. But we believe that the record in the present case, for the reasons given, is a more complete and more highly developed record than the Patent Office had at the time the applications for the Young patents were under consideration; and that we are required to take a position contrary to that taken by the Patent Office with respect to both patents.

In conclusion, it may be said that it necessarily follows that, were these patents valid, the method of construction, employed by the defendant, John McShain, Inc., as disclosed by the testimony and physical exhibits, which plaintiffs allege is an

infringement (except of claims 9 and 10 of Young patent No. 1,938,887), would in fact infringe.

 It does not necessarily follow, however, that the third-party defendant, the Marietta Concrete Corporation, would be guilty of infringement. But since we hold both patents void, it becomes unnecessary to discuss the additional reason advanced why that defendant is not liable for infringement.

An order will be signed in accordance with this opinion, invalidating both patents in suit.